Harvey **ANDERSON**, on behalf of himself and all others similarly situated, Plaintiffs,

v.

**FIRST SECURITY CORPORATION,** Spencer F. Eccles, Morgan J. Evans and Brad D. Hardy, Defendants.

No. 2:00CV418K.

United States District Court, D. Utah, Central Division.

July 31, 2001.

Mr. Thomas R Karrenberg, Esq., Anderson & Karrenberg, Salt Lake City.

Andrew L. Barroway, Esq., Schiffrin Craig & Barroway, Bala Cynwyd, PA.

Steven G. Schulman, Esq., Milberg Weiss Bershad Hynes Lerach, New York, NY.

William C. Fredericks, Esq., Milberg Weiss Bershad Hynes Lerach, New York, NY.

Paul J. Geller, Esq., Cauley & Geller, Boca Raton, FL.

Kevin J. Yourman, Esq., Weiss & Yourman, Los Angeles, CA.

James S. Jardine, Esq., Ray Quinney & Nebeker, Salt Lake City.

Gilbert R. Serota, Esq., Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, CA.

Lori G. Feldman, Esq., Milberg Weiss Bershad Hynes Lerach, Seattle, WA.

Joseph H. Weiss, Esq., Weiss & Yourman, New York City, NY.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on (1) Defendants' Motion to Dismiss Plaintiffs' Proposed Class Action Consolidated Complaint for Violation of Federal Securities Laws; (2) Defendants' Alternative Motion to Strike Allegations from Plaintiffs' Proposed Class Action Consolidated Complaint for Violation of Federal Securities Laws; and (3) Plaintiffs' Oral Motion to Lift Stay of Discovery.

A hearing on the motion to dismiss was held on April 11, 2001. At the hearing, Defendants were represented by Gilbert R. Serota, and Plaintiffs were represented by Lori G. Feldman. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the motion, and has considered the briefs filed after the hearing, including the briefs in response to Plaintiffs' submission of supplemental authority and the briefs regarding Plaintiffs' oral motion to lift the stay of discovery. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Plaintiffs have alleged securities violations under Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 (the "Act") and under Section 20(a) of the Act on behalf of all persons who purchased the common stock of First Security Corporation ("First Security" or the "Company") between October 18, 1999 (when First Security announced its financial results for the third quarter of 1999) and March 2, 2000 (the "Class Period"). The suit is against First Security and three former,

high-ranking officers of the company-Spencer Eccles, the former CEO and Chairman of the Board of Directors, Morgan Evans, the former President and Chief Operating Officer, and Brad Hardy, the former Executive Vice President–Corporate Services, General Counsel, and Chief Financial Officer (the "Individual Defendants").

Plaintiffs allege that these three officers caused First Security to engage in various financial manipulations to artificially inflate the price of First Security common stock in the period prior to First Security's anticipated merger with Zions Bancorporation ("Zions"). Plaintiffs claim that Defendants' scheme was intended to ensure the consummation of the proposed merger-and to ensure that millions of dollars' worth of stock options held by the Individual Defendants would vest at an inflated cash-out price that was directly linked to the consummation of the merger. According to Plaintiffs, the ultimate effect of Defendants' scheme, however, was to mislead investors as to First Security's financial performance, and to cause those who had purchased First Security common stock at inflated prices during the Class Period to suffer enormous damages when the truth concerning First Security's actual condition was revealed.

Plaintiffs' allegations arise out of a press release issued by First Security on March 3, 2000, which disclosed the truth about problems that, Plaintiffs claim, should have been revealed earlier. Plaintiffs allege that Defendants engaged in unlawful manipulation of their prior quarterly statements by (1) failing to disclose a sharp rise in First Security's installment loan delinquency rate upon a change to the Company's collection dialer criteria at the end of September 1999; (2) failing to take applicable write-offs on loans where loan recipients had filed for Chapter 13 bankruptcy protection; (3) manipulating First Security's vehicle auction policy in order to delay the reporting of auto loan losses and overstate the Company's financial results in the fourth quarter; and (4) knowingly and/or recklessly failing to present the Company's Fourth Quarter 1999 earnings per share truthfully and accurately.

Defendants argue that Plaintiffs' Complaint should be dismissed pursuant to Rule 9(b) and 12(b)(6). Alternatively, they move, pursuant to Rule 12(f) to strike one or more of the underlying theories allegedly supporting the 10b–5 claim. Defendants contend that this is a "fraud-by-hindsight" series of baseless accusations. Specifically, they contend that Plaintiffs' Complaint must be dismissed because each of their accounting or operational fraud theories fails to allege essential elements of a 10b–5 violation or fails to satisfy Rule 9(b) because they have not pleaded fraud with particularity. Defendants also claim that Plaintiffs have failed to plead facts showing that Defendants knew the statements were false or were deliberately reckless in not knowing they were false. Consequently, Defendants argue, Plaintiffs do not satisfy the Private Securities Litigation Reform Act's (the "PSLRA" or the "Reform Act") rigorous requirements for pleading scienter. Defendants also claim that the Complaint should be dismissed because it fails to plead all facts upon which it is based, which violates the Reform Act's pleading requirements. Finally, they claim that Plaintiffs have failed to state a claim upon which relief can be granted for violation of Section 20(a) of the Act against the Individual Defendants.

## II. STANDARDS OF REVIEW

■ Defendants have moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the provisions of the PSLRA.

The purpose of a Rule 12(b)(6) motion is to test whether the facts alleged entitle the plaintiffs to some form of legal remedy. For this purpose, the court generally confines itself to the text of the complaint and accepts all pleaded facts as true. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir.1997).

The purpose of Rule 9(b) is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs. *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1241 (D.Utah 1999). Thus, Rule 9(b) imposes particularized pleading requirements on plaintiffs alleging fraud or any claim premised on fraud. The rule provides that "in all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." As interpreted, the rule requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequences thereof. *Id.* In the securities context, a plaintiff must also allege facts showing that an alleged misstatement is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir.1997).

In addition, the Reform Act imposes even more rigorous pleading requirements on plaintiffs who bring securities fraud claims. In December 1995, Congress passed the Reform Act in an effort to heighten Rule 9(b)'s pleading standards. A complaint under the Reform Act must "specify each statement alleged to have been misleading," as well as "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). In addition, the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" and must do so with respect to each act or omission alleged to be a violation of the securities laws. 15 U.S.C. § 78u–4(b)(2). Furthermore, for allegations made on information and belief, the complaint "shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The Reform Act mandates dismissal, upon motion of the defendant, if the complaint fails to meet these requirements.

### III. DISCUSSION

To state a claim for securities fraud under Section 10(b) and Rule 10b–5, a plaintiff must allege (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) made with intent to defraud, *i .e.*, scienter; (4) on which the plaintiff relied; and (5) that proximately caused the plaintiff's damages. *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1242 (D.Utah 1999). A statement or omission is material only if a reasonable investor would consider it important in determining whether to buy or sell stock. *Novell*, 120 F.3d at 1119. Whether a misstatement or omission is material is determined by a two-step inquiry. A court must first determine whether the information would be considered important by a reasonable investor; if so, the court must then determine whether the information would still be considered important in light of other information already available to the market. *Karacand*, 53 F.Supp.2d at 1242.

Section 10(b) does not reach unintentional conduct. The scienter element requires plaintiffs to prove the defendants' intent to defraud. "[I]n order to state a private securities fraud claim, plaintiffs must create a strong inference of knowing or intentional conduct," which includes

"deliberate recklessness." *Karacand,* 53 F.Supp.2d at 1244. Further, "[m]otive, opportunity, and non-deliberate recklessness may provide some evidence of intentional wrongdoing, but are not alone sufficient to support scienter unless the totality of the evidence creates a strong inference of fraud." *Karacand,* 53 F.Supp.2d 1236; *see also In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 752 (N.D.Cal.1997), *aff'd,* 183 F.3d 970 (9th Cir.1999); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 549 (6th Cir.1999).

## A. THE ALLEGED FINANCIAL MANIPULATIONS

### 1. The Purported Misrepresentations Based Upon the Effect of the Dialer

Plaintiffs allege that First Security's reported earnings for the third and fourth quarters of 1999 were fraudulently inflated and rendered materially false and misleading because Defendants failed to cause First Security to take timely write-offs on delinquent loans in First Security's installment loan portfolio, even though these delinquent loans and related write-offs had been specifically identified in connection with the implementation of certain systems upgrades as early as September 1999. Plaintiffs allege that First Security had begun to aggressively acquire sub-prime installment loans in 1998 with the result that, by the second half of 1999. First Security had a large portfolio of loans to sub-prime borrowers that were only 70% (or less) secured.

According to Plaintiffs, in or around December 1998, to help First Security deal with this rapid growth in sub-prime loans. First Security retained an outside consulting firm. Arcadia Consulting Group ("Arcadia") to propose ways in which First Security could more accurately assess its delinquent installment loan portfolio. Arcadia ultimately identified several significant flaws in First Security's systems for identifying and handling delinquent loan accounts, including flaws in First Security's "collections dialer" (a computerized system that automatically dials delinquent accounts based on programmed criteria). In response to Arcadia's recommendations, on September 30, 1999, First Security's Risk Management Team implemented revised criteria for identifying and dialing delinquent loan accounts. This systems upgrade, according to former First Security employees, caused the number of delinquent installment loan accounts that were identified as needing active collection efforts to increase from approximately 16,000 to approximately 24,000–an increase of 50%.

However, Plaintiffs allege, Defendants did not want the dramatic 50% increase in delinquent accounts identified by the revised collections dialer program to impact First Security's reported financial results before the Zions merger closed. During the Class Period, Plaintiffs claim First Security lacked the collections personnel to handle calls with all the new delinquent installment loan borrowers that were being identified under the improved dialer criteria-a situation that left more than half of First Security's delinquent loans without any material collection efforts, and which in turn should have caused First Security to substantially increase its reserves for, or write-offs of, delinquent loans. Accordingly, Plaintiffs assert, on or about November 1, 1999–after First Security's month-end installment loan and delinquency reports for October 1999 again showed a large surge in problem delinquent loans that were directly related to the improvements in the collections dialer program-the Individual Defendants (who had received copies of these reports) caused First Security to revert back to its old dialing criteria. Based on information subsequently provided to Zions by First Security's Vice President of Risk Assessment, the effect of

this accounting manipulation was to improperly defer until the first quarter of 2000 approximately $3.7 million in loan losses that should have been taken in the third quarter of 1999, thereby rendering First Security's reported financial performance for both third and fourth quarters materially inflated.

The court agrees with Defendants that Plaintiffs have failed to state a claim based on the direct dialer theory. As Defendants have argued, just because a loan is delinquent does not necessarily mean that a write-off is required. There is a critical distinction between delinquent accounts (which do not impact financial reporting) and accounts over 120 days delinquent, which require "write-offs." To state a claim based on this theory, Plaintiffs must be able to allege that the loans had been 120 days delinquent in earlier quarters. Also, to demonstrate falsity and materiality, Plaintiffs must distinguish between charge-offs taken in the first quarter of 2000 versus what charge-offs (if any) Plaintiffs contend should have been taken in prior quarters, and in which quarter those charges should have been taken. Plaintiffs must allege how the change in the dialer resulted in a 50% increase in the number of delinquent loans, quantify any effect on First Security's reserves, and, identify how many such "delinquent" loans were "120 days delinquent" requiring write-offs before the first quarter 2000. Finally, Plaintiffs allegations of scienter are insufficient to state a claim of securities fraud.

## 2. Allegations Regarding Loan Recipients Who Filed for Chapter 13 Bankruptcy Protection

Plaintiffs allege that Defendants improperly failed to write-off the unsecured portions of outstanding loans when loan recipients filed for Chapter 13 bankruptcy protection. Thus, they claim that this alleged failure overstated First Security's third and fourth quarter net income and earnings per share by $20 million.

Plaintiffs and Defendants disagree about the industry customs or standards that should be applied to determine when the unsecured portion of loans to chapter 13 debtors should be written off. However, the court declines to determine, on a motion to dismiss, the applicable industry standard. Thus, the court will assume, for purposes of this motion, that Plaintiffs are correct in asserting that Defendants should have written off the loan either (1) when it became probable that First Security would not be able to collect all the principal and interest due under the contractual terms of the loan, or (2) by the end of the month in which the creditor receives notification of filing from the bankruptcy court, or within the charge-off time frames adopted in the classification policy, whichever is shorter.

However, assuming that such a duty existed, Plaintiffs have failed to allege specific facts to support their allegations, including the identity of a single debtor whose loan was not properly written off, when the alleged Chapter 13 filers in fact sought protection, when First Security received notice of such filings, when such loans were required to be written off, the amounts of any loan losses they claim should have been recognized earlier than they were, or the amounts supposedly affecting each quarter.[1] In addition, Plaintiffs have failed to allege that Defendants had any knowledge of the supposed falsity

---

1. Plaintiffs are not required to allege such specific facts regarding each and every debtor who falls into this category. They must, however, set forth at least a representative sam-

of their statements when the challenged statements were made or that they knew that the failure to write-off these loans was improper. Thus, the scienter requirement has not been satisfied.

### 3. Plaintiffs' Allegations Regarding the Failure to Auction Certain Repossessed Cars

Plaintiffs claim that First Security's January 19, 2000 press release announcing fourth quarter 1999 results was materially false and misleading as a result of First Security's purported delay in reporting material losses on repossessed cars. Plaintiffs claim that, on average, during the relevant period. First Security repossessed approximately 1,000 vehicles per month, representing approximately $7.5 million in delinquent installment loans. Accordingly, by withholding 1,800 cars from auction in the fourth quarter, First Security withheld approximately 60% of the total number of cars that it would have normally auctioned off during that quarter, thereby deferring the recognition of losses on approximately $13.5 million worth of delinquent loans into future quarters.

Plaintiffs contend that they need not allege details such as which cars commanded lower resale prices, how much lower the prices were, or how selling some or all of these cars in the fourth quarter would have prevented First Security's losses, etc. Rather, Plaintiffs argue, the fact that there was no legitimate reason to delay auctioning these cars confirms Plaintiffs' theory that this was intended to allow First Security to defer recognizing losses at a sensitive time prior to the closing of the Zions merger.

██ Again, the court agrees with Defendants that Plaintiffs have failed to state a claim under this theory because Plaintiffs' allegations are insufficient under the Reform Act and Rule 9(b). Plaintiffs' allegations merely question the timing of the write-offs on these vehicles and fail to meet the elements of a fraud claim. For example, Plaintiffs have failed to specify why First Security was required to auction off the 1800 cars any earlier than it did, to allege facts showing that the alleged failure to auction off cars in the fourth quarter rendered the January 19, 2000 press release false, and to allege the effect on the fourth quarter financial results resulting from these contentions. They have also not alleged that such additional sales would have materially altered the fourth quarter financial statements, and if so, in what amount. Moreover, Plaintiffs have failed to create a strong inference of knowing or intentional conduct and have thus failed to satisfy the scienter requirement.

### 4. Allegations Regarding Non–Recurring Income Items in the Fourth Quarter Earnings

Plaintiffs allege that First Security's press release announcing its fourth quarter 1999 financial results was materially misleading because it was artfully crafted to falsely imply that the company's fourth quarter 1999 reported earnings were not boosted by any non-recurring items when in fact they were. Plaintiffs contend that this failure to disclose more than four cents in non-recurring income included in First Security's earnings per share helped the Company disguise from the public its increasingly perilous financial condition and its ongoing decrease in net operating income. Plaintiffs claim that, at the time of the fourth quarter 1999 earnings an-

---

pling. To establish the materiality of this alleged financial manipulation. Plaintiffs must then specify the impact of First Securi-

ty's alleged manipulation on its third and fourth quarter net income and earnings per share and the bases for Plaintiffs' calculation.

nouncement, the impact of the misleading presentation of First Security's net income was being factored into the stock price and was artificially inflating the price. In making this claim. Plaintiffs rely on Zions' statement that First Security omitted to disclose that it had non-recurring benefits which Zions believes increased earnings per diluted share for the 1999 fourth quarter by an amount at least equal to the $0.04 in non-recurring items that the First Security earnings release indicate had reduced earnings per diluted share during that quarter.

 Again, Plaintiffs' allegations are insufficient under the Reform Act and Rule 9(b). They have failed to identify with any specificity the "non-recurring items" that purportedly "boosted" First Security's fourth quarter earnings. Also, Plaintiffs have not demonstrated that such an omission was material or that Defendants acted with the requisite intent.

## B. OTHER ISSUES

### 1. Alleged Failure to State All Facts

Defendants also claim that the Complaint should be dismissed because it fails to state all of the facts upon which it is based. They assert that, when complaints are based upon investigation of counsel, and are deemed pleaded on information and belief, such pleadings must state with particularity all facts upon which that belief is formed. Specifically, Defendants argue that Plaintiffs have failed to allege the sources of their information with respect to the internal reports that they discuss, how they learned of the reports, and the particular contents of the reports that would establish that the purported misstatements were indeed false. They also fail to identify their sources, such as when they assert that they have spoken with former employees and other non-parties,

which, Defendants argue, Plaintiffs are required to plead in a securities fraud case.

 The court declines to dismiss the Complaint on this separate ground. The Tenth Circuit has not found that confidential sources need to be named in a securities fraud case. Moreover, other courts have specifically found that they need not be named. *See, e.g., Novak v. Kasaks,* 216 F.3d 300, 313–14 (2d Cir.2000). This court agrees with the Second Circuit's determination that, "[i]f a plaintiff relies on confidential sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* at 314.

Thus, if Plaintiffs amend their Complaint, which the court will permit them to do, Plaintiffs need not identify their confidential sources. However, to the extent that Plaintiffs reveal the sources of their information with respect to the internal reports that they discuss, how they learned of the reports, and the particular contents of the reports that establish that the purported misstatements were indeed false. Plaintiffs' will obviously increase their chances of surviving another Rule 9(b) motion.

### 2. Scienter and Materiality

 Plaintiffs have argued in their opposition memorandum that the materiality and scienter requirements of a securities fraud claim cannot be viewed within the confines of each single theory of alleged financial manipulation, as Defendants would have the court do. Rather. Plain-

tiffs claim that the court must consider whether Defendants' financial statements for the third and fourth quarters of 1999, taken as a whole, overstated First Security's financial results.

The court agrees with Plaintiffs on this point. While the court has viewed the Complaint as a whole, it still finds that it does not meet the requirements of Rule 9(b), the Reform Act. and/or Rule 10(b)–5, as set forth above. The court will continue to view any amended complaint in its totality.

■ The court, however, does not agree with Plaintiffs' contention that "motive and opportunity" alone are sufficient to allege scienter. As the court stated in *Karacand*, "[m]otive, opportunity, and non-deliberate recklessness may provide some evidence of intentional wrongdoing, but are not alone sufficient to support scienter *unless* the totality of the evidence creates a strong inference of fraud." *Karacand*, 53 F.Supp.2d 1236 (emphasis added); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746, 752 (N.D.Cal. 1997), *aff'd*, 183 F.3d 970 (9th Cir.1999); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir.1999). The court does not decide at this point however whether, if Plaintiffs were to cure the various defects discussed above, the totality of the evidence would create a strong inference of fraud.

## C. 20(A) CLAIM

Under Section 20(a) of the Securities Exchange Act of 1934, Plaintiffs allege that the Individual Defendants are liable for "caus[ing] First Security to engage in the unlawful conduct and practices complained of ... by causing Fist Security to disseminate the materially false and misleading information referred to [in the Complaint]."

■ However, to establish a Section 20(a) claim, Plaintiffs "must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Maher v. Durango Metals. Inc.*, 144 F.3d 1302, 1305 (10th Cir.1998) (citation omitted). Because Plaintiffs have failed to state a claim of securities fraud against First Security, and because Section 20(a) liability is derivative of the primary violation, there can be no Section 20(a) claim.

## D. MOTION TO STRIKE

■ Because the court has found that Plaintiffs have failed to state a claim for securities fraud. Defendants' Alternative Motion to Strike Allegations from Plaintiffs' Proposed Class Action Consolidated Complaint for Violation of Federal Securities Laws is moot.

## E. PLAINTIFFS' ORAL MOTION TO LIFT STAY OF DISCOVERY

The PSLRA provides, in pertinent part: In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B).

At the April 11, 2001 hearing. Plaintiffs requested leave to conduct limited discovery of current and former employees of Zions in the event that the court concluded that any aspect of their Complaint was pleaded with insufficient particularity. Plaintiffs argue that they have already obtained (and pleaded) significant information describing how Zions became aware of alleged fraudulent practices at First Security during the alleged Class Period while conducting due diligence into First Securi-

ty's business and accounting practices in connection with the aborted Zions/First Security merger. However, Plaintiffs contend, they have been prevented from obtaining more detailed information from Zions personnel due to the terms of a confidentiality agreement with First Security, which, Plaintiffs believe prohibits Zions or its employees from voluntarily sharing additional information obtained in the due diligence. Plaintiffs argue that, but for First Security's confidentiality agreement with Zions. Plaintiffs would have been able to obtain such information before filing their Complaint, and that public policy concerns militate against allowing First Security to hide behind the confidentiality agreement.

Moreover, Plaintiffs state that Zions' counsel has informed Plaintiffs' counsel that Zions would not object to producing documents relating to Plaintiffs' allegations and producing Zions' Chief Executive Officer and Chief Financial Officer for depositions on matters relating to Plaintiffs' allegations, provided that the information is requested pursuant to a valid subpoena.[2] Thus, Plaintiffs seek to serve a deposition subpoena and accompanying document requests on Zions' CEO. CFO. and perhaps one other current or former Zions' employee, as may be appropriate in the wake of these two depositions.

Defendants adamantly oppose Plaintiffs' request to lift the stay, arguing that the stay is an integral part of the Reform Act's intent to curb frivolous securities lawsuits. They argue that the discovery stay was intended to relieve defendants of the enormous burdens, in terms of cost and the time devoted by key employees, of discovery and that it was intended to ensure that

plaintiffs satisfy the Reform Act's heightened pleading standard before they have access to information or records through discovery. Defendants also argue that Plaintiffs' inability to satisfy the heightened pleading requirements is not "undue prejudice" sufficient to warrant lifting the stay. Defendants also content that Plaintiffs have failed to identify the "particularized discovery" that they seek.

 Being cognizant of the exceptional circumstances required to lift the stay of discovery in such cases, the court nevertheless finds that, due to the confidentiality agreement that has precluded Plaintiffs from obtaining specific information prior to filing their Complaint, Plaintiffs in this case will suffer undue prejudice if they are not permitted to conduct their requested limited discovery of these third-party individuals.[3] Because Plaintiffs have articulated their alleged bases of liability, such discovery will not result in a fishing expedition. At this stage, Plaintiffs may not seek any information on issues or claims that are not already alleged in their Complaint. Rather, they may seek additional information regarding Plaintiffs' previously alleged financial manipulations and information concerning the Defendants' knowledge regarding the same. Plaintiffs must complete such discovery within 120 days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that

1. Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Complaint is DISMISSED without prejudice, and

---

**2.** Plaintiffs explain that Zions would be free of any potential liability under the terms of the confidentiality agreement if information is requested pursuant to a valid subpoena.

**3.** Plaintiffs are limited to three depositions (and accompanying document requests) of three employees or former employees of Zions.

Plaintiffs are granted leave to file an amended complaint.

2. Defendants' Alternative Motion to Strike Allegations from Plaintiffs' Proposed Class Action Consolidated Compliant for Violation of Federal Securities Laws is MOOT; and

3. Plaintiffs' Oral Motion to Lift Stay of Discovery is GRANTED, as outlined above.