**Harvey ANDERSON, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**FIRST SECURITY CORPORATION, Spencer F. Eccles, Morgan J. Evans and Brad D. Hardy, Defendants.**

**No. 2:00 CV 418K.**

United States District Court, D. Utah, Central Division.

Nov. 27, 2002.

Mr. Thomas R Karrenberg, Esq., Anderson & Karrenberg, Salt Lake City.

Scott A. Call, Thomas R. Karrenberg, Anderson & Karrenberg, Salt Lake City, UT, Andrew L. Barroway, Stuart L. Berman, Schiffrin Craig & Barroway, Bala Cynwyd, PA, Steven G. Schulman, Samuel H. Rudman, William C. Fredericks, Brian C. Kerr, Milberg Weiss Bershad Hynes Lerach, New York City, Paul J. Geller, Cauley & Geller, Boca Raton, FL, Kevin J. Yourman, Behram V. Parekh, Weiss & Yourman, Los Angeles, CA, for Harvey Anderson.

Scott A. Call, Thomas R. Karrenberg, Anderson & Karrenberg, Salt Lake City, UT, William C. Fredericks, Brian C. Kerr, Milberg Weiss Bershad Hynes Lerach, New York City, Kevin J. Yourman, Behram V. Parekh, Weiss & Yourman, Los Angeles, CA, for John L. Gilbert, Norman E. Dibble.

Scott A. Call, Thomas R. Karrenberg, Anderson & Karrenberg, Salt Lake City, UT, Lori G. Feldman, Milberg Weiss Bershad Hynes Learch, Seattle, WA, for JNL Putnam Growth Series, Norman E. Dibble, Lakeland Emplouee's Pension Fund.

James S. Jardine, Mark M. Bettilyon, John W. Mackey, Ray Quinney & Nebeker, Salt Lake City, Gilbert R. Serota, Patricia J. Medina, Ethan P. Schulman, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, CA, for First Security Corp., Spencer F. Eccles, Morgan J. Evans.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Amended Proposed Class Action Consolidated Complaint for Violation of Federal Securities Laws and Defendants' Motion to Strike Allegations from Plaintiffs' Amended Proposed Consolidated Class Action Complaint for Violations of Federal Securities Laws. A hearing on the motions was held on November 20, 2002. At the hearing, Defendants were represented by Gilbert R. Serota, and Plaintiffs were represented by Lori G. Feldman. The court took the matter under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs' Amended Proposed Class Action Consolidated Complaint for Violation of Federal Securities Laws ("Amended Complaint") is a proposed class action lawsuit filed on behalf of purchasers of First Security common stock during the period of October 18, 1999 and March 3, 2000 (the "Class Period") against First Security and three former officers of the company ("Individual Defendants").[1] Plaintiffs have alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Act") and Rule 10b–5 promulgated thereunder. *See* 15 U.S.C. §§ 78 *et seq.*; 17 C.F.R. § 240.10b–5.

The Amended Complaint alleges that First Security engaged in various financial manipulations to artificially inflate the price of First Security common stock in the period prior to First Security's anticipated merger with Zions Bancorporation Plaintiffs claim that Defendants' scheme

---

1. The officers named in this lawsuit include Spencer Eccles, the former CEO and Chairman of the Board of Directors, Morgan Evans, the former President and Chief Operating Officer, and Brad Hardy, the former Executive Vice President–Corporate Services, General Counsel, and Chief Financial Officer.

was intended to ensure the consummation of the proposed merger and to ensure that approximately $120 million worth of stock options held by the Individual Defendants would vest at an inflated price when First Security shareholders approved of the merger. According to Plaintiffs, the ultimate effect of Defendants' scheme, however, was to mislead investors and Wall Street as to First Security's financial performance and to cause those who had purchased First Security common stock at inflated prices during the Class Period to suffer damages when the truth concerning the Company's actual condition was revealed in a press release issued by First Security on March 3, 2000 and stock prices fell.

On July 31, 2001, this court dismissed Plaintiffs' first consolidated Complaint on the grounds that the Complaint failed to allege certain required elements of a securities fraud claim in accordance with the heightened pleadings standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4. *See Anderson v. First Security Corp.*, 157 F.Supp.2d 1230, 1240 (D.Utah 2001). The court's July 31, 2001 Memorandum Decision and Order specifically addressed each of the four theories of liability asserted in Plaintiffs' Complaint and held that each lacked the particularity necessary to make a proper claim under Rule 10b–5. The court also found that, considering the Complaint as a whole, Plaintiffs' allegations also failed to satisfy the pleading requirements of the materiality and scienter elements of a securities fraud claim. Because Plaintiffs did not state a Section 10(b) claim, the court also dismissed the Section 20(a) derivative claim against the Individual Defendants. The Court, however, allowed Plaintiffs' limited discovery and leave to amend their Complaint.

Plaintiffs' Amended Complaint alleges that Defendants engaged in unlawful manipulation of their financial statements by:

(1) failing, in the fourth quarter of 1999, "to write-off the sharp increase in the value of projected loan losses that were directly attributable to First Security's botched efforts to improve its 'collection dialer' operations" (Am.Compl.¶ 8(c));

(2) failing, in the third and fourth quarters of 1999, "to record a charge against income equal to the value of the unsecured portion of loans to its debtors who had filed for bankruptcy protection under Chapter 13" (*Id.* ¶ 8(a));

(3) failing, in the fourth quarter of 1999, "to charge against earnings the difference between the value of the collateral and the value of outstanding auto loans that it had foreclosed upon" and "withholding approximately 1,800 cars from auction in the fourth quarter of 1999 ... to ensure that First Security would not recognize the losses realized upon the resale of these repoed vehicles until after 1999" (*Id.* ¶ 8(b)); and

(4) making "a highly misleading earnings announcement on January 19, 2000" by failing to state that "at least $0.04 of First Security's reported operating income was attributable to nonrecurring income items" (*Id.* ¶ 9).

In addition to reasserting these four theories of alleged securities fraud, Plaintiffs also pleaded an additional theory of purported misrepresentations resulting from the information it obtained during discovery. The fifth theory contends that a February 17, 2000 joint proxy statement issued by First Security and Zions in anticipation of the shareholder votes on the proposed merger was false and misleading in that it should have disclosed projections for the first quarter of 2000 that were inconsistent with a June 1999 projection that was incorporated by reference into the February 2000 proxy. *Id.* ¶ 104.

Defendants argue that this court should again dismiss Plaintiffs' Complaint for failure to state a claim under the requirements of the PSLRA, Rule 9(b), and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike the additional claim of securities fraud.

## DISCUSSION

### I. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all well-pleaded facts as true. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir.1997). In this context, dismissal is appropriate only when it appears that Plaintiffs can prove no set of facts in support of the claims asserted. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir.1997).

Section 10(b) of the Securities Exchange Act of 1934 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of any national securities exchange-

.   .   .   .   .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

Rule 10b–5 provides, in relevant part: It shall be unlawful for any person . . .

.   .   .   .   .

(b) To make any untrue statement of a material fact or to omit to state a mate-rial fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . .

.   .   .   .   .

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

This court has explained the elements of a Section 10(b) claim as (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) made with intent to defraud, *i.e.*, scienter; (4) on which the plaintiff relied; and (5) that proximately caused the plaintiff's damages. *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1242 (D.Utah 1999). To assert a claim for securities fraud under Section 10(b) and Rule 10b–5, the PSLRA requires a complaint to " 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding a statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.' " *City of Philadelphia v. Fleming Companies Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001) (quoting 15 U.S.C. § 78u–4(b)(1)). Even before passage of the PSLRA, Rule 9(b) required a plaintiff to identify "the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequences thereof." *Caprin v. Simon Transp. Serv.*, 112 F.Supp.2d 1251, 1255 (D.Utah 2000). However, the PSLRA was intended to create a pleading standard for securities claims that was higher than any federal court had imposed up to that point in time. *Id.* The PSLRA also heightens the standard for pleading the element of scienter by requiring, " 'with respect to each act or omission alleged,' " the complaint to " 'state with particularity facts giving rise

to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). The Tenth Circuit has explained that "the appropriate level of scienter in securities fraud cases is 'a mental state embracing intent to deceive, manipulate, or defraud,' which includes recklessness" *Id.* at 1259 (citation omitted). The Supreme Court has more specifically stated that "'[t]he words "manipulative or deceptive" used in conjunction with "device or contrivance" strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct.'" *Id.* at 1258 (citations omitted). "'Intentional misconduct is easily defined since it encompasses deliberate illegal behavior.' Recklessness is much harder to define adequately." *Id.* at 1260 (citation omitted). The Tenth Circuit has defined recklessness as "'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* (citations omitted).

Although the *City of Philadelphia* court allowed recklessness to meet the standard of the PSLRA, the court cautioned that liability should not be imposed based on "fraud by hindsight." *Id.* "[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Id.* "Further, allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant intentionally withheld those facts from, or recklessly disregarded the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud." *Id.* "The question is not merely whether the

[defendant] had knowledge of the undisclosed facts; rather, it is the danger of misleading buyers that must be actually known or so obvious that any reasonable man would be legally bound as knowing.'" *Id.* (citations omitted). "Finally, 'allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.' Only where such allegations are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim." *Id.* (citations omitted).

In making out the scienter requirement under the PSLRA, "motive and opportunity may be relevant to a finding of scienter, and thus may be considered as part of the mix of information that can come together to create the strong inference of scienter required by the PSLRA." *Id.* at 1263. "When reviewing a plaintiff's allegations of scienter under the PSLRA, a court should therefore examine the plaintiff's allegations in there entirety, without regard to whether those allegations fall into defined, formalistic categories such as 'motive and opportunity,' and determine whether the plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter." *Id.*

## II. DEFENDANTS' MOTION TO DISMISS

Defendants contend that Plaintiffs' Amended Complaint fails to state a securities fraud claim because of a lack of particularity and a failure to plead scienter.

### A. Particularity—Theories of Liability [2]

#### 1. Effect of New Collections Dialer System

■ Plaintiffs' first theory of liability claims that First Security overstated its

---

**2.** Plaintiffs' new theory of liability that was

added to the Amended Complaint will be dis-

net income and earnings in a January 19, 2000 press release, which announced its fourth quarter financial results, by failing, in violation of GAAP, to write-off the sharp increase in the value of projected loan losses that were attributable to First Security's efforts to improve its collections dialer system. First Security's systems upgrade allegedly caused the number of delinquent installment loan accounts that were identified as needing active collection efforts to increase from approximately 16,000 to 24,000.

In dismissing this claim in the first Complaint, the court stated that "just because a loan is delinquent does not necessarily mean that a write-off is required." *Anderson*, 157 F.Supp.2d at 1238. The court found that the critical distinction was whether an account was over 120 days delinquent, which required a write-off. *Id.* To state a claim on this theory, the court required Plaintiffs to "allege that the loans had been 120 days delinquent in earlier quarters. *Id.* Also to demonstrate falsity and materiality, Plaintiffs must distinguish between charge-offs taken in the first quarter of 2000 versus what charge-offs (if any) Plaintiffs contend should have been taken in prior quarters, and in which quarter those charges should have been taken." *Id.* Further, "Plaintiffs must allege how the change in the dialer resulted in a 50% increase in the number of delinquent loans, quantify any effect on First Security's reserves, and identify how many such 'delinquent' loans were '120 days delinquent' requiring write-offs before the first quarter." *Id.* Finally, the court ruled that "Plaintiffs' allegations of scienter are insufficient to state a claim of securities fraud." *Id.*

Plaintiffs now plead that $2 million in loan write-offs should have been taken in the fourth quarter of 1999. They base this new figure on a memorandum written in mid-February 2000 by Scott Nelson of First Security for Harris Simmons of Zions. The memorandum discusses the events surrounding the dialer change during the fourth quarter of 1999 and explains that First Security estimates a $2 million increase in charge-offs budgeted for the year 2000. The memorandum states the amount was to "account[ ] for the overall yearly effect of the bubble on the old First Security with a heavy weighting on its effect in the first quarter."

Although this memorandum states that $2 million would be the impact on the year 2000, the memorandum makes no mention of any amount of write-offs that should have been taken in the fourth quarter of 1999. Plaintiffs' dialer theory still does not support a contention that loans should have been written off earlier. There is still no allegation that any loans had been 120 days delinquent in earlier quarters. Plaintiffs have further failed to plead "how the change in the dialer resulted in a 50% increase in the number of delinquent loans," as required by the court's order. Absent allegations connecting the alleged dialer change with delinquencies of 120 days or more in the fourth quarter, Plaintiffs have not adequately pleaded that the fourth quarter 1999 press release was false when made. Therefore, Plaintiffs have failed to meet the requirements of the court's previous order. In addition, even relying on the February 2000 memorandum, reliance on the February memorandum amounts to impermissible "fraud-by-hindsight." The memorandum was created after the fourth quarter of 1999 and the January 2000 press release about fourth quarter earnings. Accordingly, Plaintiffs use of the $2 million figure in the February memorandum does not provide the factual support necessary to state a claim.

cussed in connection with Defendants' Motion to Strike.

In the Amended Complaint, Plaintiffs also rely on a statement by Zions CEO, Harris Simmons, that he felt charge-offs on consumer loans were "understated." However, this conclusory statement does not describe the amounts that should have been charged, what policy he was employing to arrive at this conclusion, and, most importantly, whether First Security anticipated that a consequence of the dialer "bubble" would be additional write-offs in any quarter. Mr. Simmons' statement is another example of "fraud-by-hindsight" which is unacceptable under the PSLRA.

Plaintiffs assert that as with their other allegations asserting conduct violating GAAP, the issue of whether a GAAP violation has occurred is one for the fact-finder. However, Plaintiffs must allege a GAAP violation or some kind of fraudulent conduct with particularity in order to state a claim of securities fraud under the PSLRA. Plaintiffs have ignored some of the court's requirements completely and in other situations merely reasserted a previously dismissed allegation that was previously deemed inadequate.

Despite the discovery Plaintiffs obtained from Zions, they have not been able to cite to any document supporting an allegation that First Security should have written off loans in the fourth quarter of 1999 due to the dialer problem that were not written off. Plaintiffs allegation that month-end reports were issued containing statistics on installment loan accounts and associated delinquency percentages were previously rejected by the court as insufficient and remain insufficient. Plaintiffs argue that there are documents showing that the dialer problem in the fourth quarter of 1999 led to many top-level management meetings on the subject. Plaintiffs also claim that Defendants Evans and Hardy were both aware of the collections dialer problem no later than February 8, 2000. However, none of the documents cited by Plaintiffs state that loans should have been written off during the fourth quarter of 1999 and the fact that Defendants Evans and Hardy knew or should have known of the problem by February 8, 2000 does not allege that they knew of any fraudulent activities in the fourth quarter or at the time of the announcement on January 19, 2000. These allegations are insufficient to allege scienter. Therefore, under this theory of liability, the court finds that Plaintiffs have failed to meet the pleading requirements under the PSLRA to state a claim for securities fraud.

**2. Loan Recipients Who Filed for Chapter 13 Bankruptcy Protection**

■ Plaintiffs allege that First Security's reported financial results for the third and fourth quarters of 1999 were rendered materially false and misleading as a result of First Security's failure, in violation of GAAP, to take charges against earnings equal to the value of the unsecured portion of loans when loan recipients filed for Chapter 13 bankruptcy protection. Plaintiffs allege that the effect of this alleged violation was an overstatement of First Security's reported 1999 third quarter income by approximately $5.6 million and its reported 1999 fourth quarter income by $2.4 million.

The parties previously disagreed about the industry customs or standards to be applied in determining whether the write-offs should have occurred. However, because the issue was raised in a motion to dismiss context, the court accepted the standards asserted by the Plaintiff. *Anderson*, 157 F.Supp.2d at 1238. Accordingly, the court found that as stated in Plaintiffs' Complaint, Defendants should have written off the unsecured portion of the loans "(1) when it became probable that First Security would not be able to collect all the principal and interest due

under the contractual terms of the loan, or (2) by the end of the month in which the creditor receives notification of filing from the bankruptcy court, or within the charge-off time frames adopted in the classification policy, whichever is shorter." *Id.*

Nevertheless, the court's previous order of dismissal found that Plaintiffs had "failed to allege specific facts to support their allegations, including the identity of a single debtor whose loan was not properly written off, when the alleged Chapter 13 filers in fact sought protection, when First Security received notice of such filings, when such loans were required to be written off, the amounts of any loan losses they claim should have been recognized earlier than they were, or the amounts supposedly affecting each quarter." *Id.* The court noted that Plaintiffs were "not required to allege such specific facts regarding each and every debtor who falls into this category. They must, however, set forth at least a representative sampling." *Id.* n. 1. The court also concluded that Plaintiffs had "failed to allege that Defendants had any knowledge of the supposed falsity of their statements when the challenged statements were made or that they knew that the failure to write-off these loans was improper." *Id.* at 1238–39. Therefore, the court ruled that the scienter requirement had not been met.

Despite the court's previous order, Plaintiffs still do not allege when any of the alleged Chapter 13 filers sought protection in bankruptcy or when First Security received any notice of such filing. The omission of these facts renders Plaintiffs' conclusion that First Security overstated its third and fourth quarter earnings speculative. Moreover, the allegations are insufficient to show that the earnings statements were fraudulent.

Although they have not provided the particularity required by the court's previous order, Plaintiffs argue that their claim should stand because they should be able to rely on estimates prepared by Zions that calculated the amounts of outstanding loan losses that were due and should have been written off as of the end of each quarter. However, Plaintiffs admit that Zions did not analyze First Security's consumer loans on a loan-by-loan basis and did not analyze First Security's failure to write off Chapter 13 loans by studying individual Chapter 13 loan recipients in order to determine whether the accounting was correct.

Plaintiffs' argument that they can rely on Zions' calculations ignores the fact that Zions' conclusions are conclusions made at the end of February 2000, do not include a factual basis for how they were calculated, and do not state when anyone at First Security knew that the loans should have been written off. Adopting conclusory allegations from Zions does not allege a fraud claim with the requisite particularity. Plaintiffs should have provided the factual support demonstrating how Zions reached the amounts for each quarter. Although Plaintiffs' reliance on Zions' documents shows that their figures are corroborated, it does not establish that First Security knew that they should have charged off those loans during the quarters in question. There is no underlying factual allegations in the Amended Complaint that would support that conclusion, such as when the debtors sought bankruptcy protection and when First Security received notice.

Plaintiffs' sole allegation in the Amended Complaint linking the Defendants to the purported accounting fraud is the assertion that First Security "overstated its third and fourth quarter financial results in order to keep the anticipated Merger with Zions on track, and to help ensure that they would secure the personal financial benefits that would flow to them if the

Merger went ahead as planned." Am. Compl. ¶ 133. This allegation is inadequate to plead scienter under the PSLRA and the Tenth Circuit's analysis of the scienter requirements in *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1264–65 (10th Cir.2001). The Amended Complaint contains no allegation that any of the Defendants made any statement in the third or fourth quarter regarding the status of Chapter 13 write-offs. There are also no particular facts alleged showing that any of the Defendants had any knowledge of the status of the Chapter 13 loans in First Security's portfolio or that the Defendants had any information available to them at the time that would have contradicted First Security's disclosures. Given these failures, Plaintiffs conclusions of fraudulent conduct are insufficient to state a claim of securities fraud under this theory of liability.

### 3. Foreclosed Auto Loans and Deferred Auto Auctions

■ Plaintiffs also plead that Defendants violated GAAP by failing to appropriately record charges against earnings equal to the difference between the value of the collateral and the amount of the outstanding balance on auto loans that had been foreclosed upon. Plaintiffs allege that First Security's decision to withhold 1800 cars from auction in the fourth quarter of 1999 was intended to ensure that First Security accounting personnel would not recognize the losses on these repossessed cars in the fourth quarter because it was First Security's standard administrative practice to record the actual losses on each unpaid automobile loan when the cars were auctioned. Plaintiffs assert that there was no legitimate business reason for delaying the auto auctions at issue and, in fact, the delay only eroded the value of the collateral.

The court's previous order concluded that Plaintiffs' allegations were insufficient under the PSLRA and Rule 9(b). *Anderson*, 157 F.Supp.2d at 1239. The order stated that "Plaintiffs' allegations merely question the timing of the write-offs on these vehicles and fail to meet the elements of a fraud claim. For example, Plaintiffs have failed to specify why First Security was required to auction off the 1800 cars any earlier than it did, to allege facts showing that the alleged failure to auction off cars in the fourth quarter rendered the January 19, 2000 press release false, and to allege the effect on the fourth quarter financial results resulting from these contentions." *Id.* The order further concluded that Plaintiffs have "not alleged such additional sales would have materially altered the fourth quarter financial statements, and, if so, in what amount. Moreover, Plaintiffs have failed to create a strong inference of knowing or intentional conduct and have thus failed to satisfy the scienter requirement." *Id.*

Defendants argue that this theory of liability fails to state a claim because: (1) Plaintiffs once again merely question the timing of the auctions; (2) Plaintiffs again fail to explain why First Security was required to auction any particular number of vehicles in the fourth quarter of 1999; (3) Plaintiffs new allegation regarding losses on sales of securitized auto loans in the second quarter of 2000 is an impermissible attempt to allege fraud by hindsight; and (4) Plaintiffs again fail to allege with particularity the effect on the fourth quarter financials resulting from these contentions thereby failing to allege why First Security's statements regarding the fourth quarter were materially false.

The Amended Complaint now states that this information comes from an unnamed former employee of First Security. As this court recognized in its previous order, when a plaintiff relies on a confidential source, the weight given to that informa-

tion is based solely on the facts alleged and not the source itself. Where the information is deficient in particularity, it does not add anything that the information comes from another source.

The allegations in Plaintiffs' Amended Complaint are too vague and conclusory to plead a GAAP violation, which is the basis of their claim. The Amended Complaint now states that Defendants' conduct in delaying the auto auctions was "extraordinary," which is conclusory and does nothing to help the theory. Plaintiffs' new allegation regarding a $49.7 million pre-tax loss in connection with the sale of auto loans in the second quarter of 2000 is also unrelated in time because it occurred in the second quarter of 2000.

Rather than provide an explanation for why First Security's delay of the auto auction was fraudulent, Plaintiffs have merely re-alleged that there was no business reason for delaying the auctions. This court already found that allegation insufficient, and the allegation remains conclusory. Plaintiffs have not alleged any particularized information that there was any stated policy or legal duty requiring First Security to auction some or any cars at any time. Therefore, there is no basis for supporting the allegation that waiting to auction the cars until the first quarter of 2000 was done to fraudulently avoid writing off auto loans on those cars. As this court recognized in its previous order, timing alone cannot support an inference of fraud. If all that is involved is a dispute about the timing of a write-off there is not fraud and may not even be negligence.

Plaintiffs have also not met the materiality element of a securities fraud claim on this theory. Plaintiffs alleged in their prior Complaint that First Security allowed car dealerships to add surcharges of as much as 35% to the sticker price and that when First Security was forced to repossess vehicles, the average loss per vehicle

was $7,500. Therefore, Plaintiffs asserted that by withholding 1,800 cars from auction, First Security deferred recognizing $13.5 million on vehicle losses. This court held that these allegations did not allege with particularity the facts demonstrating the effect on the fourth quarter or that the sales would have materially altered the fourth quarter financial statements. Because Plaintiffs Amended Complaint contains functionally the same information as the prior Complaint, the Amended Complaint is equally deficient. The making of sub-prime loans is not in itself fraudulent. These allegations do not state that any of the 1,800 cars in question involved sub-prime loans, nor do they allege that any of the 1,800 cars were actually subject to any surcharge or any under-collateralization. These allegations do not support the value of the alleged loss on the 1,800 vehicles in question. In fact, Plaintiffs assertion that $7,500 is the average loss per vehicle is completely without basis and constitutes speculation.

Plaintiffs allege that they have sufficiently demonstrated that First Security made a change in policy-in delaying the car auction-which had an impact on the company's financial reporting and that is enough to raise an inference of scienter. However, Plaintiffs have not pled any facts indicating that there was a change in First Security's auto auction practices. Other than the former employee that states the withholding of vehicles was extraordinary, there are no facts to support that the delay constituted a change in policy. Even if Plaintiffs had stated a GAAP violation under this theory of liability, Plaintiffs' scienter allegations are conclusory and have no supporting facts that any corporate officer directed the decision to delay the auctions or knew anything about it.

Based on these pleading deficiencies, the court concludes that Plaintiffs have failed

to state a claim of securities fraud under this theory.

### 4. Non–Recurring Income Items in the Fourth Quarter Earnings

■ Plaintiffs allege that First Security's January 19, 2000 press release announcing fourth quarter 1999 earnings was misleading because the announcement of $0.33 earnings per share stated that these earnings included non-recurring expenses of $0.04 and failed to disclose at least $0.04 of non-recurring income items. Therefore, Plaintiffs assert that there are two elements of misrepresentation as to the January 19, 2000 press release-the omission of material information regarding non-recurring income and the affirmative misrepresentation as to the cause of the earnings decline. The court's previous order dismissed this claim for failing to identify the non-recurring income items that purportedly boosted First Security's fourth quarter earnings, failing to demonstrate that such an omission was material, and failing to demonstrate that Defendants acted with the requisite intent. *Anderson,* 157 F.Supp.2d at 1240.

Plaintiffs' Amended Complaint now specifies the undisclosed non-recurring income items that were not disclosed, namely (1) non-recurring income resulting from the Company's reversal of a $7 million accrual for losses arising from the residuals on automobile leases, which accounted for more than $0.02 of the $0.04, and (2) non-recurring income resulting from an upward valuation adjustment to the value of mortgage servicing rights, which accounted for the remainder of the $0.04. Am Compl. ¶ 71. In support of these allegations, Plaintiffs rely on statements by Zions regarding items comprising the alleged $0.04 that should have been reported as non-recurring income. A Zions letter to the SEC in March 2000 states that $0.02 of the $0.04 consisted of a reversal of a "$7 million accrual for losses arising from the

residuals on automobile leases" and the remainder is "an upward valuation adjustment to the value of mortgage servicing rights."

However, the Zions letter provides no information that substantiates the conclusory allegation that these items were indeed non-recurring. Plaintiffs contention that Zions is a credible source and, therefore, there is no need to require a factual basis for Zions' conclusions is contrary to the PSLRA's pleading requirements. Plaintiffs must still state with particularity all facts on which their belief is formed, and Plaintiffs have failed to do this. Plaintiffs have also stated that the two items identified by Zions were among other items but have made no attempt to state or describe the "other" non-recurring income items. Because of these failures, Plaintiffs have not provided particularized facts to support Zions' belief that there were unreported non-recurring income items or that income derived from these items was in fact non-recurring. Without these facts, Plaintiffs' allegations are speculative and clearly do not support that the Defendants knew that the statement was false when made.

Furthermore, Plaintiffs have failed to allege that the manner of reporting the fourth quarter earnings caused any damages or was materially misleading. Under Rule 10b–5, Plaintiffs must allege that the Defendants alleged fraud actually harmed Plaintiffs, *i.e.,* loss causation. To establish loss causation, plaintiffs need only establish that the misrepresentations made by the defendant are related to the losses suffered by the plaintiff. "To adequately plead loss causation, plaintiffs may allege that the price of [the company's] common stock was artificially inflated by defendants' materially misleading statements when plaintiffs made their respective purchases." *Picard Chem. Profit Sharing*

*Plan v. Perrigo Co.,* 940 F.Supp. 1101, 1126 (W.D.Mich.1996).

To plead loss causation in this case, Plaintiff rely on the "fraud-on-the-market" theory. However, the presumption that loss causation is satisfied if the plaintiff simply purchased a security at an allegedly inflated price is not accepted by all the federal circuits. The Eleventh Circuit has expressly rejected precedent from other circuits, which held that if a plaintiff pleads a fraud-on-the-market theory, he need do nothing more to plead loss causation. The Eleventh Circuit held that the fraud-on-the-market theory is used "to support a reasonable presumption of reliance, not causation." *Robbins v. Kroger Prop., Inc.,* 116 F.3d 1441, 1447–48 (11th Cir.1997). The Eleventh Circuit required proof of "a causal connection between the misrepresentation and the investment's subsequent decline in value." *Id.* at 1449; *see also Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.,* 74 F.Supp.2d 352, 361–62 (S.D.N.Y.1999) (dismissing complaint for failure to allege loss causation because plaintiff's injury could not be linked to the defendant's fraud where decline in stock price occurred before the market became aware of fraud).

In this case, the only public disclosure on the non-recurring income issue came on March 15, 2000, by way of Zions' supplemental proxy statement and Plaintiffs do not allege that this March 15, 2000 disclosure triggered any stock drop. Unlike the other claims that are linked to the March 3, 2000 disclosure, Plaintiffs make no claim that the March 15, 2000 disclosure or correction of the so-called non-recurring income resulted in any stock price impact. Rather, Plaintiffs claim that the underlying problem that this misstatement masked was that First Security's business was deteriorating and the disclosures on March 3, 2000 of that fact had a significant impact on stock prices. The court con-cludes that the requisite connection does not exist between the alleged misstatement and the stock drop on March 3, 2000. This issue was not included in the press release on March 3, 2000, and when it was subsequently disclosed on March 15, 2000, there is no allegation that there was any impact on the stock price. Because this theory is unconnected with any loss of any shareholder, Plaintiffs have not pleaded loss causation. *See Grossman v. Novell,* 120 F.3d 1112, 1124 (10th Cir.1997) ("While the alleged statements may have helped bolster the share price during the class period, there is no allegation of fact that there was anything materially misleading about these statements, let alone that the statements were material to the drop in Novell's stock price ... Nor has there been any allegation that the market ever discovered these assertions to be true, or that such discoveries had an adverse impact on Novell's stock price.")

Even if First Security's manner of reporting led to a mistaken impression in the market, Plaintiffs have not produced a single contemporaneous document showing a directive from Defendants or any knowledge on the part of any Defendant that the reporting of the fourth quarter financial statements were false when they were published. Plaintiffs' claim is also unsupported by the testimony of Zions' officials. In the Amended Complaint, Plaintiffs cite to statements from Zions' executive Harris Simmons that the reversal of loan loss reserves was "unusual," but ignore his admission that he did not have sufficient information to characterize them as wrongful. Plaintiffs also quote Zions' executive Dale Gibbons as describing the alleged residual reversal as "highly suspect," but ignore his testimony that he simply differed with the accounting for estimating the residual values of auto leasing. These characterizations, without more, do not show that the failure to call attention to

certain items in the press release was false or that Defendants acted with any intent to deceive or misrepresent First Security's earnings to the market. Accordingly, this claim also fails for failure to plead the requisite scienter to state a securities fraud claim.

**B. Scienter**

■ Even if this court had found that Plaintiffs had adequately stated GAAP violations under their theories of liability, that alone is not enough to state a securities fraud claim. " 'Allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.' Only where such allegations are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim." *City of Philadelphia*, 264 F.3d at 1261 (citations omitted).

Defendants claim that Plaintiffs' entire Section 10(b) claim should be dismissed on the separate ground that they have failed to plead scienter. As discussed above, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" 15 U.S.C. § 78u–4(b)(2). The standard for pleading scienter under the PSLRA is high. The Tenth Circuit has explained that "the appropriate level of scienter in securities fraud cases is 'a mental state embracing intent to deceive, manipulate, or defraud,' which includes recklessness" *City of Philadelphia*, 264 F.3d at 1259 (citation omitted). The Tenth Circuit has defined recklessness as " 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.' " *Id.* (citations omitted).

Plaintiffs have alleged that the Individual Defendants were motivated by the potential for lucrative stock options and employment agreements if the First Security stockholders approved the Zions merger, that the Individual Defendants were aware of or recklessly disregarded that First Security was issuing materially false or misleading statements, and that the Individual Defendants wanted to inflate and artificially maintain First Security's stock price to keep the merger with Zions on track.

However, these allegations of motive and opportunity are insufficient because Plaintiffs have failed to plead specific facts demonstrating scienter, such as citing contemporaneous documents showing that Defendants knew their statements were false when made or providing factual, not conclusory, allegations regarding their various fraud theories. The conclusory characterizations of Defendants' motives are insufficient to allege scienter. For example, Plaintiffs allegation that deferring the auto auctions was "highly unusual and plainly deliberate" is too conclusory. Furthermore, the motive and opportunity allegations in the Amended Complaint are unchanged from Plaintiffs' previous, inadequate Complaint.

The Tenth Circuit rejected motive allegations that the defendants' conduct was (1) to facilitate notes offerings, (2) minimize the potential of future lawsuits, (3) to protect and enhance their executive positions and substantial compensation, and (4) to enhance the value of their own stock in the company. *Id.* at 1268. The court stated that these "alleged motives, which are shared by all companies and which are not specifically and uniquely related to Fleming in particular, are unavailing." *Id.* at 1269. The court cited the Second Circuit stating that " '[w]e do not agree that a company's desire to maintain a high bond or credit rating qualifies as a sufficient

motive for fraud in these circumstances, because if scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'" *Id.* (citations omitted).

The allegations that Defendants were motivated by enhancing the value of their stock or their executive positions, are motives shared by all company executives and cannot raise a strong inference of scienter. *Id.* In addition, the comment made by Defendant Hardy to Simmons that First Security's "primary objective" in reporting its fourth quarter 1999 financial results was to meet analysts' numbers and not disappoint Wall Street is merely an example of a company's shared motives to look good. Such a statement does not infer that the company was engaged in fraudulent conduct in order to look good for Wall Street.

Plaintiffs allegations that Defendants were motivated to engage in fraud in order to keep the Zions' merger on track is also insufficient. Courts have found that a desire to consummate a corporate transaction or acquisition is insufficient to demonstrate scienter. *See, e.g., In re The Vantive Corp. Sec. Lit.,* 283 F.3d 1079, 1097 (9th Cir.2002).

Even without their motive allegations, Plaintiffs assert that the "totality of the circumstances" paints a strong inference of deliberate misconduct. Plaintiffs include their allegations of GAAP violations and the misleading nature of the January 19, 2000 earnings announcement and the February 17, 2000 proxy statement to support an inference of scienter. However, Plaintiffs repetition of the allegations of their Complaint does not legitimize their conclusory claims. Plaintiffs alleged theories of liability fail to state a claim since they fail to show falsity. Therefore, the list is comprised of mere conclusion and cannot make

out the requisite strong inference of scienter.

Plaintiffs have failed to allege specific factual support that the Individual Defendants had knowledge of the alleged violations, were reckless in not knowing of the situation, or recklessly disregarded that investors were being misled. In *City of Philadelphia,* the Tenth Circuit rejected arguments that company officers "must have known" about alleged fraud because of their positions in the company and alleged access to information. 264 F.3d at 1264. Therefore, Plaintiffs cannot rely on generalized statements about the Individual Defendants' job duties or titles to allege scienter. Plaintiffs' conclusory allegation that the Individual Defendants were responsible for First Security's public filings is also insufficient. The Tenth Circuit did not find scienter against the individual defendants involved in the *City of Philadelphia* even though they had each signed the allegedly fraudulent filings. *See id.* at 1249–50.

Furthermore, Plaintiffs cannot meet the pleading requirements by merely stating conclusory allegations such as Defendants had actual knowledge or were recklessly indifferent. General allegations that the Individual Defendants had access to information is not sufficient to allege scienter because Plaintiffs do not specify what the information was and how the information should have alerted each of these Defendants that the alleged misstatements were false. *See id.* at 1265.

"When reviewing a plaintiff's allegations of scienter under the PSLRA, a court should therefore without regard to whether those allegations fall into defined, formalistic categories such as 'motive and opportunity,' determine whether the plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter." *Id.* at 1263. This court cannot conclude

that Plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter. Therefore, Plaintiffs' claims are dismissed for failure to state a claim of securities fraud on this basis as well.

## C. 20(a) Claim

Under Section 20(a) of the Securities Exchange Act of 1934, Plaintiffs allege that the Individual Defendants are liable for causing First Security to engage in the unlawful conduct and causing Fist Security to disseminate materially false and misleading information. To establish a Section 20(a) claim, Plaintiffs "must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1305 (10th Cir.1998) (citation omitted).

Plaintiffs have not stated a primary violation of the securities laws against First Security. Because Section 20(a) liability is derivative of the primary violation, there can, therefore, be no Section 20(a) claim. Accordingly, Plaintiffs' Section 20(a) claim is dismissed.

## II. MOTION TO STRIKE

■ Plaintiffs' new theory of liability added to the Amended Complaint, which is the subject of Defendants' Motion to Strike, alleges that First Security's and Zions' joint proxy statement issued on February 17, 2000, the Amendment No. 2 to its Form S–4 Registration Statement with the SEC, was false and misleading because it expressly incorporated by reference a June 7, 1999 Form 8–K, which included IBES projections, that was filed by Zions' with the SEC. As of February 17, 2000, Plaintiffs allege that at least Defendants Hardy and Evans were in possession of updated projections, dated February 9, 2000, indicating that First Security would actually earn 33% less than previously projected for the first quarter of 2000. Plaintiffs allege that First Security's incorporation of the June 1999 projections for the year 2000 when it was in possession of new projections for the first quarter of 2000 constitutes securities fraud. Defendants argue that the court should strike this new theory of liability because it is the result of discovery abuses by Plaintiffs.

The court's previous order, which allowed Plaintiffs to conduct discovery, recognized that allowing such discovery was extraordinary and limited such discovery by stating: "Because Plaintiffs have articulated their alleged bases of liability, such discovery will not result in a fishing expedition. At this stage, Plaintiffs may not seek any information on issues or claims that are not already alleged in their Complaint. Rather, they may seek additional information regarding Plaintiffs' previously alleged financial manipulations and information concerning the Defendants' knowledge regarding the same."

Defendants argue that under the court's order Plaintiffs could not seek discovery beyond their previously alleged theories of liability and it was improper for them to add a new claim to their Amended Complaint. Despite the court's limited grant of discovery, Plaintiffs conducted broad discovery beyond the four theories alleged in their original Complaint. Defendants have submitted transcripts of their objections at depositions to any examination outside the original theories of liabilities. Plaintiffs claim that although Defendants made objections they never sought protection by the court. Plaintiffs also argue that rather than adding a new claim, the Amended Complaint merely ties additional Class Period statements (the February 2000 Proxy) to Defendants' knowledge regarding its deteriorating financial condition during the class period. Plaintiffs state that the class period has remained the same and the only

two claims, based on Section 10(b) and Section 20(a), have remained the same.

Plaintiffs new claim of securities fraud is unrelated to the other claims asserted in their previous Complaint and was improperly added to the Amended Complaint. Plaintiffs' previous Complaint did not mention the February 17, 2000 proxy statement at all. Plaintiffs took advantage of the court's lift of the discovery stay and impermissibly based their new claim on information obtained through discovery after the prior Complaint had been filed but before this court had sustained the legal sufficiency of the Complaint. This court sought to ensure the intent of the PSLRA by restricting discovery and Plaintiffs abused the court's ruling.

In addition to violating this court's order, Plaintiffs also violated the PSLRA's automatic stay of discovery because the stay remained in effect with respect to any matters on which this court did not lift the stay. This conduct is precisely what Congress sought to prevent when it passed the PSLRA. Pursuant to the PSLRA and this court's previous ruling, this court concludes the new theory of liability based on the February 2000 proxy statement should be and is stricken from the Amended Complaint.

■ However, even if this claim were allowed to stand, the court finds that, as with Plaintiffs' other theories of liability, it fails to state a claim of securities fraud. The February 2000 proxy statement does not contain any material misstatements that could be derived from the June 1999 net income projections for 2000. Plaintiffs contentions are based on mere incorporation by reference. First Security does not confirm, refer to, or restate the old projections. At the time the proxy was issued, the June 1999 projections were over seven months old. The June 1999 projection was also for the entire year 2000, not the first quarter of 2000. Furthermore, Plaintiffs have not alleged that First Security disclosed or adopted the June 1999 estimate itself. Absent such adoption, there is no actionable statement on the part of First Security.

Even assuming that First Security did adopt the June 1999 estimate at the time it was issued, there is no indication that First Security intended to revive those projections in February 2000. The estimate was not endorsed anywhere on the face of the proxy. Moreover, the proxy specifically states that "[t]he information contained in this proxy statement/prospectus speaks only as of the date of this proxy statement/prospectus unless the information specifically indicates that another date applies." The June 1999 projections reflect that the "as of date" was June 1999. Therefore, the estimates were clearly dated and limited to the June 1999 time period. The language in the proxy and the dates included on the estimates therefore negate any possible reliance by investors. In addition, by incorporating the June 1999 projections, Defendants were merely complying with SEC rules that set forth what must be included by reference or as an exhibit in the Proxy. First Security's compliance with SEC rules does not mean that First Security adopted the content of all such prior filings as presently accurate.

Plaintiffs have not alleged any basis that would obligate First Security to include the February 9, 2000 projections for the first quarter of 2000 in the February 2000 proxy. Therefore, even if this claim were not stricken, it fails to state a claim of securities fraud.

### III. Request to Amend

Plaintiffs have requested leave to file another amended complaint if this court concludes the present Amended Complaint is deficient. However, the court has already allowed Plaintiffs an opportunity to

amend and granted limited discovery. Plaintiffs' inability to state a claim in accordance with the court's previous order and the standards of the PSLRA after such opportunities demonstrates to the court that granting leave to amend would be futile. Therefore, Plaintiffs' request for leave to amend is denied and the court's dismissal of the Amended Complaint is with prejudice.

## CONCLUSION

Plaintiffs' Amended Complaint fails to meet the heightened pleading requirements for a securities fraud claim under the PSLRA. Therefore, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE.