**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DALTON PETRIE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>and<br><br>DR. THOMAS LEE; MARGARET YU; SCOTT LOVELL,<br><br>*Appellants*,<br><br>v.<br><br>ELECTRONIC GAME CARD, INC.; LEE J. COLE; LINDEN BOYNE; KEVIN DONOVAN; PAUL FARRELL; EUGENE CHRISTIANSEN; ANNA HOUSSELS; LYNNE ROCHELLE ATTIAS; JONATHAN STEINBERG, as Executor of the Estate of Lord Leonard Steinberg,<br><br>*Defendants-Appellees*. | No. 12-55620<br><br>D.C. No. 8:10-cv-00252-DOC-RNB<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
December 4, 2013—Pasadena, California

Filed July 30, 2014

Before:  Harry Pregerson and Morgan Christen, Circuit Judges, and Roslyn O. Silver, Senior District Judge.[*]

Opinion by Judge Christen

---

## SUMMARY[**]

### Securities Fraud

Reversing the district court's dismissal of an action under §§ 10(b) and 20(a) of the Securities Exchange Act against officers and directors of Electronic Game Card, Inc., the panel held that the court did not properly strike portions of the third amended complaint and that the complaint adequately pleaded false statements and scienter.

The panel held that the stricken allegations were not based on discovery obtained in violation of the Private Securities Litigation Reform Act, which provides that all discovery shall be stayed during the pendency of a motion to dismiss, where the discovery materials were subpoenaed before the defendant former chief executive officer gave notice of his intent to file a motion for judgment on the pleadings.  The panel held that a party does not violate a

---

[*] The Honorable Roslyn O. Silver, Senior District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

PSLRA discovery stay by relying on materials provided by a third party pursuant to a valid subpoena issued when no PSLRA discovery stay was in effect.

The panel held that with the stricken allegations, the third amended complaint adequately pleaded falsity and scienter. The panel remanded the case for further proceedings.

## COUNSEL

Laurence M. Rosen (argued), The Rosen Law Firm, New York, New York, for Appellants.

Michael L. Cypers (argued), Crowell & Moring, Los Angeles, California; Ethan P. Shulman, Crowell & Moring, San Francisco, California, for Defendant-Appellee Linden Boyne.

Lawrence B. Steinberg, Buchalter Nemer, Los Angeles, California; Jeffrey J. Greenbaum and Hervé Gouraige, Sills Cummis & Gross, Newark, New Jersey, for Defendant-Appellee Lee Cole.

Jonathan D. Cogan (argued), Steven G. Kobre, and Andrew M. Meehan, Kobre & Kim, New York, New York; Christopher Kim, Bryan Sheldon, and Lisa J. Yang, Lim, Ruger & Kim, Los Angeles, California, for Defendants-Appellees Kevin Donovan, Eugene Christiansen, Paul Farrell, Anna Houssels, Lynne Rochelle Attias, and Jonathan Steinberg.

**OPINION**

CHRISTEN, Circuit Judge:

Electronic gaming has become ubiquitous; even slot machines are now made to operate at the push of a button rather than the pull of a lever. Electronic Game Card, Inc. set out to further this trend by producing electronic "scratch off" devices for casinos, lotteries, and other gaming establishments. The company appeared to be flying high, with millions of dollars in reported assets as late as September 2009. But a little over a year later, Electronic Game Card, Inc. filed for bankruptcy and reported it was broke.

A group of investors filed suit, alleging that the company's former Chief Executive Officer and Chief Financial Officer violated section 10(b) of the Securities Exchange Act, and that others violated section 20(a) of the Act. The Private Securities Litigation Reform Act of 1995 (PSLRA) provides that "all discovery . . . shall be stayed during the pendency of any motion to dismiss" in a private securities litigation action. 15 U.S.C. § 78u-4(b)(3)(B). The complaint at issue in this appeal, the Third Amended Complaint, was based in large part on discovery materials subpoenaed before the company's former CEO gave notice of his intent to file a motion for judgment on the pleadings. These materials were not received until after the CEO gave such notice.

The questions we must decide are: (1) whether the district court properly struck allegations and exhibits from the Third Amended Complaint because they were based on discovery obtained in violation of a PSLRA discovery stay; and

(2) whether the Third Amended Complaint adequately pleaded false statements and scienter. For the reasons explained below, we reverse the district court's judgment dismissing this action and remand for further proceedings.

## BACKGROUND

In September 2010, the lead plaintiffs (Investors), appellants here, filed a First Amended Complaint (FAC) alleging violations of section 10(b) of the Securities Exchange Act of 1934 by defendants-appellees Lee Cole and Linden Boyne, and violations of section 20(a) of the Act by all remaining defendants-appellees. Cole and Boyne are the former CEO and CFO, respectively, of Electronic Game Card, Inc. (Company)[1]. The other individual defendants-appellees served as Company executives, on its board of directors, or both.[2] Section 10(b) prohibits securities fraud by use of deceptive and manipulative practices. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5. Section 20(a) makes "control persons" liable for violations of other rules or regulations under the Act, including securities fraud. 15 U.S.C. § 78t(a).

According to Investors, until 2010 the Company owned all shares of a subsidiary called Electronic Game Card, Ltd. (Subsidiary) that operated in the United Kingdom and Europe. The Subsidiary played an essential role in the Company's business. In fact, Investors alleged that "nearly

---

[1] We use "Company" to refer to both Electronic Game Card, Inc., a Nevada corporation, and its previous iteration as a Delaware corporation.

[2] This opinion refers to members of this second group of defendants-appellees as "Control Persons."

all of the Company's reported revenues and income were derived from" the Subsidiary.

Under the purported terms of a 2002 agreement through which the Company acquired all shares of the Subsidiary, if the Company attempted to "change the Memorandum or Articles or other governing instruments of [the Subsidiary]," "change the number of persons constituting the Board of Directors of [the Subsidiary]," or "change the persons constituting the Board of Directors of [the Subsidiary]," a default would be declared and the shares would revert to the original owners.[3]

In 2009, Control Persons Kevin Donovan and Eugene Christiansen assumed control of the Company in place of Cole and Boyne. The record indicates substantial infighting during this period. Under new leadership, the Company removed the Subsidiary's board, causing ownership of the Subsidiary's stock to revert back to its original owner sometime in early 2010.

In February 2010, the Company announced that its auditor, Mendoza Berger & Company (Auditor), had withdrawn its audit opinions of the Company's financial statements for fiscal years 2006 to 2008 after becoming "aware of irregularities in the audit confirmation of a bank account represented . . . as having been held by [the Subsidiary]." In May 2010, the Company publicly announced that these financial statements should no longer be relied upon because of "significant concerns as to the[ir]

---

[3] The agreement was amended in 2006 in a manner that did not affect the relevant terms at issue in this case. This opinion refers to both the agreement and amendment collectively as the "2002 Agreement."

integrity." The Company's announcement revealed that it was "concerned that reported revenue may be materially overstated and that the reported carrying value of its assets and investments in third-party companies may not be fairly stated." Investors alleged that the withdrawal of the Company's financial statements and related information in its annual reports filed with the SEC demonstrated that these statements were false when made. They also alleged that the "highly adverse fact" that the Company could lose ownership of the Subsidiary was hidden from them, "rendering [its] statements about its ownership of [the Subsidiary], its assets and revenue stream, materially false and misleading."

Control Persons moved to dismiss the FAC, and the district court granted the motion, in part. It dismissed the 10(b) claims against Control Persons, but it did not dismiss the 20(a) claims. The court ruled that Investors had adequately pleaded a primary 10(b) violation by the Company, as well as each moving defendant's status as a control person. The court also concluded that Investors adequately pleaded the Company's scienter—a prerequisite to finding a violation of section 10(b)—through its allegations relating to Cole and Boyne. The court observed: "none of the Moving Defendants contest the notion that the [FAC] contains viable allegations of Boyne's and Cole's scienter, which may be imputed to [the Company]." But Cole and Boyne had not answered the FAC by this point in the litigation. From the record available on appeal, it appears they lived abroad and had not been served with the FAC at the time of the district court's ruling.

Investors filed their Second Amended Complaint (SAC) in February 2011. It alleged 10(b) violations by all defendants except Control Persons Christiansen, Farrell, and

Houssels, and 20(a) violations against all individual defendants.

Both the FAC and SAC made substantially similar factual and legal allegations as to the primary 10(b) violations. In particular, Investors alleged that the Company and its management made false statements concerning the Company's ownership of the Subsidiary, and that the subsequent retraction of the Auditor's opinions shows that the Company's public financial statements were false over several years.[4]

These basic factual allegations of the Company's scienter were not initially challenged by the defendants. After the district court ruled on Control Person Donovan's motion to dismiss the SAC, it set a schedule for discovery, and on June 23, 2011, Investors commenced discovery by issuing a third-party subpoena to the Company's Auditor. The subpoena was returnable on July 25, 2011.

At some point after filing the SAC, Investors managed to contact Cole, and he agreed to answer the Investors' allegations. On August 8 or 9, 2011, Cole's counsel notified Investors of his intent to file a motion for judgment on the pleadings. In Cole's opinion, this notification gave rise to a stay of discovery under the PSLRA, but Investors communicated their disagreement with the contention that a PSLRA discovery stay was in effect.

---

[4] A copy of the 2002 Agreement was not provided to Investors until after the SAC was filed, but Investors were aware from the outset of the litigation of the existence of an agreement that caused ownership of the subsidiary "to revert or transfer to a third party."

On August 22, 2011, Investors received materials from the Auditor in response to their previously-issued discovery requests. Cole filed a motion for judgment on the pleadings shortly thereafter, along with a motion to confirm the existence of a PSLRA discovery stay, and Boyne filed a motion to dismiss. The district court granted both dispositive motions without prejudice and denied as moot Cole's motion to confirm the existence of a discovery stay.

The Third Amended Complaint (TAC) was filed in November 2011, and it presents a substantially more detailed and unified account of the alleged misfeasance by Cole and Boyne. Specifically, the TAC alleges that Cole and Boyne actively concealed the existence of the 2002 Agreement from the Auditor, and perhaps from the Company's board as well.[5] In support of their earlier efforts to have the SAC dismissed, Cole and Boyne argued that the board knew about the 2002 Agreement, and Boyne pointed to the minutes of a February 1, 2006 board meeting at which the agreement was supposedly discussed. But Cole and Boyne were the only two directors listed as "present" for this meeting, and the TAC asserts that Cole and Boyne either concealed or fabricated these minutes. In support of this contention, the TAC alleges that while Cole and Boyne claimed to have provided the Auditor with all Company board minutes for 2006, discovery from the Auditor did not include the February 1 minutes,

---

[5] The parties dispute whether the existence of the 2002 Agreement was disclosed to Control Persons prior to the change in the Subsidiary's board. We need not decide this issue, though we note that there is no explanation in the record why the Company's leadership would willingly follow a course (changing the Subsidiary's board) that would cut off most of the Company's revenue, if the Company's leadership had known the terms of the 2002 Agreement.

despite including minutes for other board meetings around the same time.

The TAC also alleges the Company was able to report millions of dollars in cash and cash equivalents at the end of fiscal years 2006, 2007, and 2008 because its financial statements were wrongfully consolidated with its Subsidiary's. Allegedly, much of this cash was represented to the Auditor as being held in a bank account with Credit Suisse in Gibraltar, Spain that was controlled by the Company and its Subsidiary.

Relying on the newly-acquired Auditor discovery materials, the TAC claims that the multi-million dollar Gibraltar account never existed. Discovery materials obtained from the Auditor and appended as exhibits to the TAC include allegedly false bank audit confirmations and bank statements on Credit Suisse stationary, which appear to bear Boyne's signature.[6] The TAC alleges that these forms also bear forged bank employee signatures and a fabricated address for a Credit Suisse "Audit Confirmation Unit" in Malaga, Spain. The exhibits, if authentic and accurate, would be consistent with Investors' theory that false representations concerning the Company's finances began when Cole and Boyne were CEO and CFO of the Company, respectively, and continued while Boyne remained CFO. The TAC alleges that forms were sent in Credit Suisse's name to the Auditor in

---

[6] We generally consider exhibits attached to a complaint and incorporated by reference to be part of the complaint. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Defendants-appellees do not argue that the exhibits to the TAC may not be considered on any basis other than their argument that the materials incorporated therein were obtained in violation of the PSLRA discovery stay.

order to falsely confirm the existence of bank accounts represented as the Company's or the Subsidiary's.

The TAC alleges that these falsified confirmations were the reason the Company's Auditor withdrew its audit opinions for fiscal years 2006, 2007, and 2008. In support of this allegation, the TAC includes an exhibit that purports to be a letter from Credit Suisse stating that a bank account represented by Boyne as belonging to the Company in fact belonged solely to Cole and Boyne, not the Company. Another exhibit appears to be a letter Credit Suisse subsequently wrote to Control Person Donovan (who had become the Company's new CEO) stating that the bank would be reporting the matter to the Royal Gibraltar Police and advising the Company to do the same.

Investors allege that the dramatic shift in the Company's fortunes, illustrated by the withdrawal of the audit opinions, was principally explained by its loss of the Subsidiary in 2010. They allege that, had the Auditor known the Company could lose ownership of the Subsidiary under the terms of the 2002 Agreement, it would not have allowed the Company's and Subsidiary's financial reports to be consolidated because this would have been contrary to generally accepted accounting principles (GAAP).[7] Investors claim that Cole

---

[7] The TAC cites a provision of GAAP that reads:

> A majority-owned subsidiary shall not be consolidated if control is likely to be temporary or if it does not rest with the majority owner (as, for instance, if the subsidiary is in legal reorganization or in bankruptcy or operates under foreign exchange restrictions, controls, or other governmentally imposed uncertainties so

and Boyne concealed the existence of the 2002 Agreement from the Company's Auditor because the agreement's restrictions on changing the Subsidiary's board and articles of association deprived the Company of its ability to exercise control, and that this limitation, in turn, made the consolidation of the Company's financial statements with the Subsidiary's inappropriate under GAAP. The TAC alleges that the Company's consolidated financial statements were therefore "false," and that as a result of this alleged pattern of fraud, Investors lost the entire value of their investment when the value of the Company's stock collapsed. Cole responded to the TAC by filing a motion to strike several of its exhibits, and to strike allegations in the TAC that were derived from the Auditor discovery materials. Cole, Boyne, and Control Persons filed motions to dismiss the TAC.

The district court ruled that a discovery stay arose automatically on August 8 or 9 pursuant to the PSLRA, when Cole announced his intent to file a motion for judgment on the pleadings. The court opined that Investors "should have immediately ceased all discovery" at that point. Acknowledging that motions to strike pleadings are disfavored, the court nonetheless ruled that Investors "cannot be permitted to openly flaunt a direct violation of the PSLRA." Under Federal Rule of Civil Procedure 12(f), the court struck the portions of the TAC referring to or relying upon the Auditor discovery materials, in light of its

---

severe that they cast significant doubt on the parent's ability to control the subsidiary).

Research and Dev. Arrangements, Statement of Fin. Accounting Standards No. 94, § 13 (Fin. Accounting Standards Bd. 1987).

conclusion that the materials were obtained in violation of the PSLRA discovery stay.

The district court ultimately ruled: "Without the stricken allegations, the TAC does not contain sufficient facts to state a claim for violations of Section 10(b) or Section 20(a) of the Exchange Act," and Investors' allegations did "not sufficiently allege falsity or scienter to meet the heightened pleading requirements of the PSLRA." The district court dismissed the TAC with prejudice and entered final judgment in favor of defendants. Investors appealed.[8]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal from the district court's final order dismissing the action with prejudice under 28 U.S.C. § 1291. We review the district court's decision to strike the pleadings under Rule 12(f) for abuse of discretion. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). We review dismissal of an action under Rule 12(b)(6) de novo. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). We accept the appellants' factual allegations as true and construe them in the light most favorable to the appellants. *Id.* "Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

---

[8] The Company filed for bankruptcy and did not participate in this appeal.

## DISCUSSION

## I.  The Private Securities Litigation Reform Act's Discovery Stay Provision

The PSLRA was enacted in 1995 "in response to several perceived abuses in securities litigation, including discovery abuses." *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d 909, 911 (9th Cir. 1999).  The PSLRA creates heightened pleading requirements for private securities fraud actions like this one. *Metzler*, 540 F.3d at 1054–55.  In addition, under the heading "Stay of discovery," the PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B).  Our decision in *SG Cowen* analyzed this provision.  There, we observed that the PSLRA discovery stay was designed to avoid the "unnecessary imposition of discovery costs on defendants." *SG Cowen*, 189 F.3d at 911 (quoting H.R. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. Sess. 730, 731).  We held that the "failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay." *Id.* at 913.  "'Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than

information produced by the defendants after the action has been filed.'" *Id.* at 912 (quoting *Medhekar v. U.S. Dist. Ct. for N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996)). "The 'Stay of Discovery' provision of the Act clearly contemplates that 'discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*.'" *Id.* at 912–13 (quoting S. Rep. No. 104–98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693) (emphasis in original).

The district court relied on Federal Rule of Civil Procedure 12(f) when it struck the portions of the TAC that were based on the Auditor discovery materials. We review this ruling for abuse of discretion. *Nurse*, 226 F.3d at 1000. Rule 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The district court emphasized (without elaboration) the term "immaterial," which suggests that it struck part of the TAC because it believed the Auditor's discovery was rendered immaterial by Investors' violation of the statutorily-imposed stay.

We have defined "immaterial" as "that which has no essential or important relationship to the claim for relief or the defenses being plead." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation and internal quotation marks omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). Under this definition, even if the incorporation of the Auditor discovery materials into the TAC was improper, the discovery would not be "immaterial" under Rule 12(f). Evidence of forgery and fraud clearly has an "essential or important relationship" to Investors' claim for relief in their securities fraud action. *See Fantasy, Inc.*, 984 F.2d at 1527. Nor are the discovery materials "redundant," "impertinent,"

or "scandalous" as contemplated by Rule 12(f). The district court may have cited the "immaterial" provision of Rule 12(f) to signal that it concluded the discovery could not be considered because it had been obtained in violation of the PSLRA's discovery stay, but this interpretation of Rule 12(f) does not accord with how our court has defined the term "immaterial." *See id.*

We recognize that the district court may have relied on Rule 12(f) because Congress did not expressly provide a remedy for violations of the PSLRA stay. Investors do not offer any convincing argument that the district court would not have the discretion to sanction a violation of the PSLRA stay provision, as it would any court-ordered discovery stay. *Cf.* Fed. R. Civ. P. 37(b)(2)(A)(iii) (permitting courts to strike pleadings when a party fails to obey a discovery order). But because, as discussed below, we decide the Auditor discovery materials were not obtained in violation of a PSLRA discovery stay, we do not need to define the contours of the district court's authority to strike pleadings obtained in violation of this type of stay. Even if a PSLRA discovery stay arose on August 8 or 9 when Cole announced his intent to file a motion for judgment on the pleadings, such stay would not have been violated by the use of discovery received in response to discovery requests properly issued before any stay arose.

## II. Appellants did not violate the PSLRA discovery stay provision.

The PSLRA requires that "all discovery and other proceedings shall be stayed" during a pending motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). Defendants argue that Investors impermissibly obtained the Auditor discovery

materials in violation of this stay provision.  Their theory depends on the assumption that the PSLRA prevents the use of discovery that was properly requested, but received after a stay arose.[9]

Our decision in *SG Cowen* makes clear that no discovery may proceed until the court has sustained the legal sufficiency of a complaint.  189 F.3d at 912–13.  The Supreme Court recently noted that the PSLRA "permits defendants to obtain *automatic* stays of discovery." *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1063 (2014) (emphasis added).[10]  When an amended complaint is filed after an earlier complaint has been upheld (at least in part), the bulk of district courts have ruled that filing a motion

---

[9] Defendants Cole and Boyne also argue that Investors violated Federal Rule of Civil Procedure 45 by failing to provide timely notice of the receipt of the Auditor discovery materials.  Rule 45 requires a party to give notice to other parties before service of a subpoena commanding the production of documents.  Defendants cite no authority holding that notice must be given upon receipt of discovery when prior notice of the subpoena was properly provided.  Aside from the fact that the district court did not strike portions of the TAC pursuant to Rule 45, this argument fails because it appears Investors did provide such notice to all defendants who had appeared in the action as of the time the subpoena was issued.

[10] Most district courts that have directly addressed the question have recognized that a PSLRA discovery stay arises automatically, without the need for judicial declaration, upon the filing of a dispositive motion. *See, e.g.*, *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1104 (C.D. Cal. 2007); *Sedona Corp. v. Ladenburg Thalmann*, No. 03 CIV. 3120 LTSTHK, 2005 WL 2647945, at *3 (S.D.N.Y. Oct. 14, 2005).  *But see Lane v. Page*, No. CIV 06-1071 JB/ACT, 2009 WL 1312896, at *1 (D.N.M. Feb. 9, 2009) ("The Court interprets the PSLRA to require the Court to stay discovery while a motion to dismiss is pending, but does not read the statute to automatically stay the case upon the filing of a motion.").

to dismiss the amended complaint also triggers a stay of any discovery. *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-KJD-GWF, 2012 WL 5879783, at *3 (D. Nev. Nov. 20, 2012) ("[I]t is proper to impose the stay of discovery pending the decision on the motion to dismiss the Second Amended Complaint, notwithstanding that the parties engaged in discovery prior to its filing."); *McGuire v. Dendreon Corp.*, No. C07-800-MJP, 2009 WL 666863 (W.D. Wash. Mar. 11, 2009); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 WHP, 2012 WL 1438241, at *2 (S.D.N.Y. Apr. 25, 2012); *Sedona Corp.*, 2005 WL 2647945, at *3; *cf. In re Lantronix, Inc. Sec. Litig.*, No. CV 02-03899 PA, 2003 WL 22462393, at *2 (C.D. Cal. Sept. 26, 2003) (refusing to lift stay even when defendant did not challenge part of plaintiffs' claim). Nonetheless, assuming that a discovery stay arose when Cole gave notice of his intent to file a motion for judgment on the pleadings, we do not read the statute to have retroactive application; that is, the admonition that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" does not prohibit a party from accepting third-party responses to properly-issued requests for written discovery.

The common sense reading of the PSLRA's plain language "all discovery and other proceedings shall be stayed" is that no litigant shall take any steps in pursuit of discovery during the pendency of any motion to dismiss.[11]

---

[11] The parties do not distinguish between motions to dismiss and motions for judgment on the pleadings. We therefore assume the PSLRA discovery stay provision is triggered by a motion for judgment on the pleadings in the same manner it is trigger by a motion to dismiss. *Cf. Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted) (a motion for judgment on the pleadings is the functional equivalent of a motion to dismiss).

There is no indication that Investors did so here.  Instead, on June 6, 2011, after the district court had ruled on the first dispositive motions and upheld part of the FAC, the court issued a scheduling order allowing the parties to proceed with discovery.  Neither Cole's counsel nor any other party represented at the June 6 scheduling conference objected to the district court's proposed schedule.  The parties (except Boyne) subsequently exchanged initial disclosures consistent with the scheduling order, and no party argues on appeal that the scheduling order was improperly entered.  Furthermore, it is undisputed that there was no dispositive motion pending—and therefore no discovery stay in effect—as of June 23, 2011, when Investors subpoenaed records from the Company's Auditor.  No party objected to the subpoena at that time, and Cole did not notify Investors of his intent to file a motion for judgment on the pleadings until August 8 at the earliest.  The subpoena to the Auditor was therefore properly issued, and the only question here is whether Investors could permissibly rely on tardy discovery responses, delivered to them after a PSLRA discovery stay allegedly came into effect again.

We would expect that if Congress intended a PSLRA discovery stay to prohibit the use of documents received in response to previously-issued discovery requests, it would have said so explicitly.  The determinative fact for this appeal is that Investors subpoenaed the Auditor's records pursuant to the district court's discovery schedule at a time when no motion to dismiss was pending.  The PSLRA was enacted to reform "abusive practices committed in private securities litigation." H.R. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.  In arguing that Investors engaged in abusive practices, defendants rely heavily on our decision in *SG Cowen*, which noted that "discovery should be

permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*." 189 F.3d at 912–13 (citation and internal quotation marks omitted) (emphasis in original). But here, the district court did sustain the sufficiency of the complaint, and it initially allowed discovery to proceed pursuant to its discovery scheduling order. None of the defendants objected to this scheduling order. Even on appeal, no party has asked us to hold that a district court may not allow discovery in a securities class action case when a prior complaint has been upheld as to some parties and no motion to dismiss is pending or anticipated, simply because the court has not expressly upheld every part of the complaint as to all parties. This record does not show that Investors engaged in abusive practices or violated a statutory stay.

Defendants contend that Investors violated the stay by incorporating some of the Auditor discovery materials into the TAC. The purpose of the PSLRA would not be furthered by the broad reading of the discovery stay provision that defendants-appellees advocate. The discovery stay was intended to prevent discovery abuses such as the "unnecessary imposition of discovery costs on defendants," particularly as a means to coerce settlement. *SG Cowen*, 189 F.3d at 911 (quoting H.R. Rep. No. 104–369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731). Discovery costs may also affect third parties like the Company's Auditor. But if the Auditor was concerned about the costs of complying with the subject subpoena, it did not object, nor did it argue that a discovery stay was in effect such that it

should be relieved of the obligation to respond.[12]  Similarly, if defendants believed Investors' subpoenas were issued improperly, they could have sought immediate relief from the court.  They did not do so, and we see no basis for such an objection; defense counsel conceded at oral argument before our court that no discovery stay was in place when the June 23 subpoena was issued to the Auditor.[13]

If the receipt of discovery was not a violation of the PSLRA, surely the use of the discovery materials in the TAC was not prohibited.  The mere reliance on validly-obtained materials is not an abusive practice, nor does it impose unnecessary discovery costs on defendants.  We hold that a party does not violate a PSLRA discovery stay by relying on materials provided by a third-party pursuant to a valid subpoena issued when no PSLRA discovery stay was in effect.  Because we conclude that Investors did not violate the PSLRA, we reverse the district court's order striking portions of the TAC that incorporated the Auditor discovery materials.

---

[12] *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001), cited by defendants, is distinguishable on this basis.  In *Faulkner*, a third party objected to discovery, and the court refused to lift an existing PSLRA discovery stay to allow plaintiffs to enforce their subpoena.  *Id.* at 401–06.

[13] Defendants cite *Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256 (D. Utah 2002) in support of their argument that plaintiffs may not use discovery materials obtained when a stay is in effect, but *Anderson* is distinguishable.  There, plaintiffs violated a specific court order intended to preserve a PSLRA stay that was undeniably in place.  *Id.* at 1272.

**III.    The TAC adequately pleads falsity and scienter.**

We now consider whether the full TAC—including the portions the district court struck pursuant to Rule 12(f)—adequately pleads falsity and scienter as to defendants Cole and Boyne.

We review the dismissal of a complaint pursuant to 12(b)(6) de novo. *Metzler*, 540 F.3d at 1061. "The required elements of a private securities fraud action are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Id.* (internal quotations omitted). "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). "For a misrepresentation to be material, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011) (citation and internal quotation marks omitted).

A complaint alleging securities fraud must raise a "strong inference" of scienter. *Metzler*, 540 F.3d at 1061. To sufficiently plead scienter, "the complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citation omitted). "[T]he danger of misleading buyers must be

actually known or so obvious that any reasonable man would be legally bound as knowing." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) (internal quotation marks and emphasis omitted). A "strong inference" of scienter is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. While motive is helpful in establishing scienter, "the absence of a motive allegation is not fatal." *Id.* at 325. Finally, the court reviews all allegations holistically, rather than in isolation, to determine if a complaint is well-pleaded. *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011) (citing *Tellabs*, 551 U.S. at 326).

The adequacy of the TAC might be a close question if we were to uphold the decision to strike the Auditor discovery materials, but because we do not, our task is straightforward. The TAC alleges that Boyne forged documents and signatures in order to misrepresent the Company's assets. An exhibit to the TAC includes a purported record of a Credit Suisse bank account in the Subsidiary's name that was previously confirmed by Boyne and represented as having a balance of over 12 million dollars as of September 2009. We must accept the allegations in the TAC as true, and if the exhibits incorporated into the TAC are what they purport to be, this bank account never existed. Investors contend that the misrepresented assets from this account were reported in public statements by the Company, including financial statements for fiscal years 2006, 2007, and 2008. Finally, as noted, Investors allege that Cole and Boyne knowingly concealed the existence of the 2002 Agreement from the Company's Auditor in order to wrongfully consolidate the Company's financial statements with its Subsidiary's. In particular, Cole and Boyne allegedly concealed or fabricated

minutes for a board meeting at which the 2002 Agreement was purportedly discussed.

We express no opinion on the merits of these factual allegations. In this appeal, Cole and Boyne do not attempt to dispute the authenticity of the Auditor discovery materials. Their focus has been on their assertion that these materials should not be considered in assessing the sufficiency of the TAC. Given that we have rejected that assertion, the allegations described in the preceding paragraph are sufficient to plead both falsity and scienter under the PSLRA. The order dismissing this action must be reversed because it was based on the insufficiency of the falsity and scienter allegations against Cole and Boyne.

Finally, Control Persons ask us to affirm the district court's dismissal of the section 20(a) claims against them because, they argue, the TAC alleged facts establishing that they acted in good faith. The district court did not reach this question; it dismissed the derivative claims alleged against Control Persons after dismissing the primary 10(b) claims against Cole and Boyne. It is not our practice to consider arguments in the first instance on appeal.[14] "[O]ur general assumption is that we operate more effectively as a reviewing court than as a court of first instance." *Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir. 2013).

---

[14] We are mindful that at this stage in the litigation, the allegations against all defendants-appellees in the TAC are just that: allegations that have not yet been tested in court.

**CONCLUSION**

Because the Auditor discovery materials were not obtained or used in violation of the PSLRA, we reverse the district court's decision to strike portions of the TAC. Considering all of the allegations in the TAC, we conclude that it adequately pleads both falsity and scienter as to defendants Cole and Boyne. We reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**